

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
AVGRAPHICS, INC., JEAN PIERRE AZOULAY
And DARIA MCDERMOTT,

                    Plaintiffs,

        -against-

NYSE GROUP, INC.,
(successor in interest to New York
Stock Exchange, Inc.) JOHN GREGORETTI,
TONY WALENTY, SAM COCOZZA,
MARGARET DeB. TUTWILER, JOHN THAIN,
individually and as employees of
NYSE GROUP, INC.,ANTHONY E. WILSON,
 a/k/a TONY WILSON,
DANA GREGORETTI, and
E-TRADE, Securities LLC

                   Defendants.
----------------------------------------X

**07 CIV 8430**

**COMPLAINT WITH
JURY DEMAND**



     Plaintiffs, AVGRAPHICS, INC., JEAN PIERRE AZOULAY and

DARIA MCDERMOTT, by and through their attorneys, the law

firm of CRONIN & BYCZEK, LLP, as and for their Complaint

against Defendants, respectfully alleges, with knowledge of

its own actions and on information and belief as to the

actions of others, and sets forth the following:

### NATURE OF ACTION

     1.   This is a civil action for monetary damages,

proximately the result of conduct engaged in by Defendants

which conduct was violative of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §1961 et seq. (RICO).

The Complaint also seeks damages under New York State Law for injury to business reputation under New York General Business Law §368d, common law fraud, defamation, breach of contract, breach of fiduciary duty, unjust enrichment, extortion, bribery and tortious interference with contract.

## JURISDICTION AND VENUE

2.    Plaintiffs allege violations of 18 U.S.C. §1961 et seq. and the Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §1964 and independently the Courts jurisdiction is invoked pursuant to 28 U.S.C. §1331 and 1332 and diversity of citizenship.

3.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, in that certain of the Plaintiffs' claims arise under the laws of the United States and supplemental jurisdiction over the remainder of Plaintiffs' State Law claims in this action, pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this district under 18 U.S.C. §1965 (a) and (b) and 28 U.S.C. §1391 (b), because a substantial part of the events giving rise to the claims occurred in this district.

5.   Personal jurisdiction is proper under 18 U.S.C.
§1965 and N.Y. CPLR §§301 and 302, because each Defendant
either resides in New York, or, in person or through an
agent, transacts or has transacted business within New York,
or contracts or has contracted to supply goods or services
within New York, or has committed a tortious act within New
York.  Each Defendant did and continues to do business
within New York, made contracts to be performed in whole or
in part in New York, and/or performed tortious acts
reasonably expected to have consequences in New York and in
this district while deriving substantial revenue from
interstate or international commerce.

## IDENTITY OF THE PARTIES AND BACKGROUND
## WITH RESPECT TO ALL PLAINTIFFS

5.   At all relevant times mentioned herein, Plaintiff
AVGRAPHICS is a New Jersey corporation having its principal
place of business at 11 Wall Street in the County, City and
State of New York.

6.   At all relevant times mentioned herein, Plaintiff
Jean Pierre Azoulay was a resident of the State of New
Jersey and at times a shareholder of AVGRAPHICS and at all
relevant times herein was employed by Plaintiff AVGRAPHICS a
New Jersey corporation having its principal place of

3

business at 11 Wall Street in the County, City and State of New York.

7.    At all relevant times mentioned herein, Plaintiff Daria McDermott, formerly known as Daria Desiderio, was a resident of the State of New York and at times a shareholder of AVGRAPHICS and at all relevant times herein was employed by Plaintiff AVGRAPHICS, a New Jersey corporation having its principal place of business at 11 Wall Street in the County, City and State of New York.

8.    NYSE Group, Inc., now the owner of the entity previously known as the New York Stock Exchange, Inc., ("The NYSE"), being a Delaware corporation that maintains its principal executive offices at 11 Wall Street in the County, City and State of New York, is a holding company that, through its subsidiaries, is a leading global multi-asset financial marketplace that operates multiple securities market centers, including the New York Stock Exchange.

9.    At all relevant times mentioned herein, Defendant Anthony E. Wilson a/k/a Tony Wilson was a resident of the State of New Jersey and was employed by Plaintiff AVGRAPHICS.

10.   At all relevant times mentioned herein, Defendant Dana Gregoretti was a resident of the State of New Jersey and was employed by Plaintiff AVGRAPHICS.

4

11. At all relevant times mentioned herein, Defendant John Gregoretti was a resident of the State of New Jersey and was employed by Defendant NYSE Group, Inc., now the owner of the entity previously known as the New York Stock Exchange, Inc., ("The NYSE"), being a Delaware corporation that maintains its principal executive offices at 11 Wall Street in the County, City and State of New York.

12. At all relevant times mentioned herein, Defendant Tony Walenty was a resident of the State of New Jersey and was employed by NYSE Group, Inc., now the owner of the entity previously known as the New York Stock Exchange, Inc., ("The NYSE"), being a Delaware corporation that maintains its principal executive offices at 11 Wall Street in the County, City and State of New York.

13. At all relevant times mentioned herein, Defendant Sam Cocozza was a resident of the State of New York and was employed in the Security Department by NYSE Group, Inc., now the owner of the entity previously known as the New York Stock Exchange, Inc., ("The NYSE"), being a Delaware corporation that maintains its principal executive offices at 11 Wall Street in the County, City and State of New York.

14. At all relevant times mentioned herein, Defendant

5

Margaret DeB. Tutwiler was a resident of the State of New York and was employed as Executive Vice President of Communications by NYSE Group, Inc., now the owner of the entity previously known as the New York Stock Exchange, Inc., ("The NYSE"), being a Delaware corporation that maintains its principal executive offices at 11 Wall Street in the County, City and State of New York.

15.   John Thain, Chief Executive Officer of NYSE and has been since January 15, 2004.  Pursuant to Article IV, Section 3, of the NYSE Constitution, as CEO, Thain is responsible for the administration and management of NYSE's affairs.  Thain is also a member of the NYSE's Board of Directors.

16.   E-Trade Securities, LLC conducts trading, investing, banking and lending and is a Delaware Corporation located at 135 East 57th Street, New York, New York  10022 with a mailing address of P.O. Box 1542 Merrifield, Virginia 22116-1542

## BACKGROUND FACTS

17.   On or about February 10, 2004, NYSE Defendants approached Plaintiff Azoulay and solicited him to breach his contract with his employer AVHQ and enticed Azoulay to form a corporation and take several other AVHQ employees and service NYSE exclusively.

6

18.  Upon information and belief, NYSE "bought out" the AVHQ contract including the non-solicitation clause to the satisfaction of the owners of AVHQ who released Azoulay and the other employees dedicated to the NYSE account from their non-compete employment agreement.

19.  NYSE expressly agreed to fund the "start up costs" of the new organization and agreed that the arrangement would continue as long as Azoulay wished provided there was no evidence of overt attempts to damage NYSE.

20.  In exchange for said agreement, Plaintiff Azoulay formed a corporation, AVGraphics, hired the AVHQ employees, agreed to work exclusively for NYSE and to locate his office within the NYSE building at 11 Wall Street, New York, NY.

21.  On January 1, 2005, NYSE and AVGRAPHICS entered into a contract (hereinafter referred to as the "NYSE Agreement", which expressly provided for non-solicitation of AV Graphics' employees. "Each Party covenants and agrees that, during the Term of this Agreement and for a period of one (1) year thereafter, it shall not solicit, recruit, hire or employ, or encourage any third party to solicit recruit, hire or employ, or assist any third party in soliciting, recruiting, hiring or employing, the Services of any of the other Party's officers or employees without prior written consent of such other Party".  The "NYSE Agreement" also

7

provided a renewal clause. "Subject to the provisions of Section 11 below, the term ("Term") of this Agreement shall be for an initial period of one (1) year ("Initial Term") and may be extended for subsequent periods of one (1) year (each year a "Renewal Term") on the mutual written consent of the parties".

22.  Furthermore, the NYSE Agreement provided for cancellation of the Agreement only under certain circumstances and required NYSE to provide note.

23.  At no time did the Agreement require nor did AVGRAHICS' employees sign any agreement with NYSE not to utilize information gained through its relationship with NYSE. Further, neither AVGRAPHICS nor its employees were required to sign a confidentiality clause or agreement with NYSE.

24.  From January 1, 2005 until December 20, 2006, the "NYSE Agreement" was strictly adhered to by both parties. AVGRAPHICS employed Plaintiff Azoulay as Director as per the NYSE Agreement and hired numerous employees including Daria McDermott, as Administrative Director.

25.  On or about January 1, 2005, AVGRAPHICS hired Anthony Wilson as an Audiovisual Engineer.

26.  On or about January 1, 2005 at the specific request of Defendant NYSE employee, John Gregoretti,

AVGRAPHICS hired Defendant Dana Gregoretti.

27.  NYSE arranged for an employee, Defendant Walenty, to act as liaison between NYSE and AVGRAPHICS.

28.  On or about January 15, 2005, Anthony Wilson enticed Plaintiff Azoulay into giving him his password to his computer for the purposes of managing the AVGRAPHICS' participation in "Fantasy Football".

29.  On April 20, 2005 and unbeknownst to Plaintiff Azoulay, Defendant Wilson and/or Defendant Gregoretti, used the password to illegally make a trade on Azoulay's personal computer in his E-Trade account.  Defendant Wilson intended to "set Azoulay up" for a violation of NYSE Rules and Regulations and SEC by utilizing the computer network to all with the express knowledge of NYSE to make a trade with "insider information".  (The purchase was for 35 shares of Archipelago stock.  The merger between NYSE and Archipelago was not common knowledge and scheduled to be announced to the public the following day, April 20, 2005.  The purchase price on April 20, 2005 was $16.80 whose value increased the following day to $32.00.)  These shares were never noticed by Azoulay who indeed transferred funds into his now depleted account on April 21, 2005 to purchase 200 shares at the increased value of $32.00.

30.  The Archipelago stock was never traded and is

9

owned by Plaintiff Azoulay to this date.

31.  On or about September 20, 2005, Plaintiff Azoulay terminated Wilson's employment as Wilson had exhibited violent behavior in the past, Azoulay requested a guard from NYSE Security Management, Defendant Sam Cocozza, and requested that NYSE liaison, Defendant Walenty be present. Defendant Walenty and a security guard were present outside the door of AVGraphics.

32.  Defendant Wilson threatened to reveal to authorities that Plaintiff Azoulay had made an "illegal trade" with respect to the "insider" information AVGRAPHICS management employees had been given with respect to the merger between NYSE and Archipelago. Knowing that the only trades Azoulay had made for Archipelago stock were after the merger, Azoulay was outraged and immediately demanded Defendant Wilson leave his office.

33.  Defendant Wilson went further and attempted to bribe and extort money from Azoulay by suggesting that Azoulay pay him and his girlfriend, Dana Gregoretti, money not to go to the authorities, namely John Gregoretti, NYSE's Regulation liaison with the Securities and Exchange Commission, hereinafter "SEC". When Azoulay rebuffed the threat, Defendant Wilson got loud and violent.  Defendant Wilson was escorted out of the NYSE building followed

10

shortly thereafter by Defendant Dana Gregoretti.

34. Plaintiff Azoulay immediately told Defendant Walenty of Defendant Wilson's violent attempt to bribe and extort money from Azoulay and AVGRAPHICS. Azoulay told Walenty he intended to go directly to the SEC and police. At Walenty's suggestion, he directed Azoulay instead to meet with NYSE's head of security, Defendant Sam Cocozza. After hearing all the facts, Defendant Cocozza strongly suggested if not directed Azoulay not to go to the police. Upon information and belief, NYSE Regulations Director, John Gregoretti, was immediately involved in the Wilson and Dana Gregoretti's discharge and specifically the attempt to extort and bribe money for AVGRAPHICS.

35. Within a day or two, Azoulay feeling outraged, threatened and uncertain of the direction by Cocozza and Walenty not to involve the authorities, he sought the guidance of NYSE employee Mike Cohen, who also told Azoulay not to go to the authorities and not to worry about his relationship with NYSE.

36. On or about October 2006, Azoulay was approached by Walenty and Courtney, Counsel to NYSE concerning the extension of the AVGRAPHICS/NYSE Agreement for 2007. As the agreement identifies the expectation of the parties that the agreement would be extended with a 20% increase in overall

11

cost, as they had in the past year, the parties agreed to the extension of the agreement with that cost increase. In reliance on the agreement, AVGRAPHICS continued its employment contracts with its employees adjusting costs and disbursements consistent with the agreed upon extension and increase.

37. On December 14, 2006, Azoulay was summoned by NYSE Human Resources to report to the Executive Offices. Present at the meeting were Defendant Walenty, NYSE Counsel, Neil Courtney, Diane Moreno from Human Relations and Louise Quick from Ethics. Azoulay was told that NYSE knew of an "illegal" trade in violation of the agreement between Azoulay and NYSE and that effective immediately Azoulay would not be permitted to enter the AVGRAPHICS offices located within the NYSE building at 11 Wall Street, New York, NY. Azoulay protested that he had done nothing wrong and NYSE insisted that they had proof positive from his E-Trade account that a trade had been made to purchase Achipelago stock prior to the official announcement of the merger between NYSE and Archipelago. NYSE stripped Azoulay of his NYSE credentials and Identification Card and escorted him out of the building.

38. On or about December 2006, upon information and belief, Defendant John Gregoretti, in conjunction with

12

Defendant Wilson and Defendant Walenty illegally obtained
information from Plaintiff Azoulay's E-Trade account.

39.  On or about December 2006, Defendant E-Trade
violated its fiduciary duty to Azoulay and released
confidential information to NYSE all to the economic
detriment of Azoulay and AVGRAPHICS.

40.  In the moments that followed this meeting, NYSE
stole the personal computer off Azoulay's desk, informed the
AVGRAPHICS' employees that Azoulay was "out" and demanded
AVGRAPHICS' books and records from AVGRAPHICS'
Administrative Director, Daria McDermott, along with all
employment files for all employees.

41. Further, NYSE instructed all AVGRAPHICS' employees
to continue working on NYSE projects and assured all
employees that they would hire them as NYSE employees.

42. In the days that followed the December 14, 2006
meeting, NYSE negotiated with AVGRAPHICS with the deliberate
misrepresentation that they intended to extend the
AVGRAPHICS' agreement as originally planned.  However, on or
about December 31, 2006 on the eve of the expiration of the
agreement, NYSE demanded that Azoulay give up all ownership
in AVGRAPHICS and that AVGRAPHICS continue to work
exclusively for NYSE without the contractual increase and on
a month-to-month basis.

13

43. Given the "Hobsons Choice", Azoulay turned over all ownership in AVGRAPHICS to Plaintiff Daria McDermott. Azoulay continued to be threatened by NYSE with violation of the agreement and federal law.

44. Daria McDermott was forced to work extra hours without compensation, etc.

45. Defendants Wilson and Gregoretti evidence their conspiracy by sending repeated e-mails to AVGRAPHICS' employees in which they revel in their ability to destroy AVGRAPHICS and Azoulay.

46. NYSE defendants continued to defame Azoulay and disparage AVGRAPHICS by publishing the untruths concerning the aforementioned "insider trade".

47. During the course of the first quarter of 2007, NYSE repeatedly solicited AVGRAPHICS' employees in violation of the agreement.

48. Further NYSE made repeated promises to the new owner of AVGRAPHICS, Plaintiff Daria McDermott, to the effect that they would continue the interim monthly agreement with her, provided she continued to work exclusively for NYSE at the old agreement rate of pay. All to the economic detriment of AVGRAPHICS.

49. Further, NYSE entered into an agreement with Azoulay to reconsider their expulsion of him if he could

14

cure were given.

52. NYSE employees again made formal offers of
employment to AVGRAPHICS' employees in violation of the
Agreement and in furtherance of their illegal attempt to
obtain the AVGRAPHICS' company.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS NYSE,**

**TUTWILER, WALENTY AND GREGORETI**

53. Plaintiffs repeat and realleges the allegations
contained in paragraphs 1 through 52 as if fully set forth
herein.

54. At all relevant times, Defendants NYSE, Tutwiler,
Walenty, Gregoretti, and Wilson occupied a position of trust
and confidence at AVGRAPHICS and that Wilson owed AVGRAPHICS
the duties of a fiduciary.

55. Defendants NYSE, Tutwiler, Walenty and Gregoretti
acted in concert with, aided and abetted, and participated
in the breaches of fiduciary duties committed by Wilson by
encouraging Wilson to accept bribes and extort money from
AVGRAPHICS in exchange for their financial enhancement in
the demise of AVGRAPHICS.

56. The bribes and extortion provided by defendants
were given maliciously, with full knowledge of, or reckless
disregard for, legal rights.  The bribes and extortion were

16

given to induce and encourage Wilson's breaches of fiduciary duties.

57. As a direct and proximate result of such conduct, AVGRAPHICS was damaged in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00) with interest, and is entitled to an award of punitive damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT NYSE**

58. AVGRAPHICS repeats and realleges the allegations contained in paragraphs 1 through 57 hereof as if fully set forth herein.

59. By its dishonest and disloyal conduct described above, NYSE has materially breached his express and implied contractual obligations to AVGRAPHICS including a breach of the covenant of good faith and fair dealing.

60. By reason of the foregoing material breaches of the Agreement, AVGRAPHICS has been damaged in an amount to be determined at trial but in no event less than One Million Dollars ($1,000,000.00), together with interest thereon.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS NYSE,**

**WALENTY, TUTWILER**

61. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 60 hereof as if fully set forth herein.

17

62. At all relevant times, defendants were fully aware of AVGRAPHICS employees' contractual obligations to AVGRAPHICS including their duty to act in the best interest of AVGRAPHICS and avoid conflicts of interests and self-dealing.

63. By the aforesaid acts of bribery and extortion, defendants knowingly interfered with AVGRAPHICS employees' contractual obligations to AVGRAPHICS. The interference with AVGRAPHICS employees' contract with AVGRAPHICS by defendants was wrongful, unlawful, without justification, and was done to cause injury and damage to AVGRAPHICS.

64. As a result of the willful and malicious interference with its contract with AVGRAPHICS' employees, AVGRAPHICS has been damaged in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00), together with punitive damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS NYSE

65. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 64 hereof as if fully set forth herein.

66. Defendants NYSE have realized, and may continue to realize substantial sums of money from their abuses of their duties of loyalty to plaintiffs.

18

damages in an amount to be determined at trial, but in no event less than $500,000, plus punitive damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT WILSON

73. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 and 72 as if fully set forth herein.

74. As brokers and agents for plaintiff Azoulay, Defendant E-Trade was a fiduciary of plaintiff, owing all the duties of fiduciaries including the duties of care, loyalty, trust, good faith and fair dealing and an obligation to protect plaintiff's best interests.

75. The breaches of fiduciary duties were interrelated insofar that divulging the information was intended to guarantee their participation in other stock transactions.

76. By such conduct, defendant E-Trade has purposefully, intentionally and maliciously breached their fiduciary duties by defendant E-Trade, plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than Ten Million Dollars ($10,000,000.00), together with interest thereon, and punitive damages in an amount to be determined at trial.

77. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 76 of this

20

loss of enjoyment of life; were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life; have sustained loss of earnings and earning capacity, which they continue into the future, have lost substantial benefits and retirement income; have lost significant advantageous tax treatment; have lost substantial health and life insurance benefits; have been impaired in their ability to obtain a similar position within an international organization, may be forced to move their domicile and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 80 of this Complaint with the same force and effect as if set forth herein.

82. After Plaintiff's unlawful termination in December 2006, the defendants caused to be published through its internal e-mail system which is read and distributed widely inside and outside the NYSE, notice of Plaintiff's summary dismissal. Additionally, through NYSE's official spokesperson acting within the scope of his employment, the Defendants gave a statement to the AVGRAPHICS' employees through Tony Walenty and NYSE employee, Diane Moreno,

22

Plaintiffs containing all the software, trade secrets, and
the goodwill associated with AVGRAPHICS.

89. Defendants wrongfully obtained Azoulay's purported
ownership of AVGRAPHICS and all the inner workings of
AVGRAPHICS.

90. On or about December 31, 2006, Azoulay and
McDermott made a demand to the Defendants NYSE to return
AVGRAPHICS' property.  The NYSE Defendants failed to return
the property to Plaintiffs.

91. Defendants' acts were done maliciously and
deliberately with knowledge of Plaintiffs' rights and with
intent to interfere with those rights, warranting punitive
damages at the amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT

## RICO CLAIM

92.  At all relevant times herein Anthony Wilson, John
Gregoretti, Dana Gregoretti, Tony Walenty, Sam Cocozza,
Margaret Deb. Tutwiler and John Thain have been associated
with one another and together constitute an Enterprise and
form an enterprise as that term is defined by 18 U.S.C.
§1961(4) (the "NYSE Enterprise").

93.  At all times relevant to this complaint the "NYSE
Enterprise" engaged in a pattern of racketeering activity,
designed and conducted to acquire, maintain or operate an

24

enterprise engaged in interstate or foreign commerce through a pattern of racketeering activity, including but not limited to theft, extortion, bribery and wire fraud.

94.    The foregoing acts constitute "racketeering activity" within the meaning of 18 U.S.C. §1961(1), which includes acts of bribery and extortion chargeable under State law and punishable by imprisonment for more than one year.    The foregoing acts are felonies under New York Penal Law §§180.03, 180.08.

95.    The bribes, extortion, theft and wire fraud by Defendants involved separate and distinct unlawful acts and schemes.    These unlawful acts were neither isolated nor sporadic events, but rather involved regular and repeated violations of law to accomplish the defendants' desired ends in the course of conducting and participating in the business of the Enterprise.    These acts occurred over a period of at least two years.    These acts were related by virtue of the common participants and the common aim to illegally obtain Plaintiffs' business to further their own interests.    As such, the conduct of Defendants constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

96.    At all relevant times, Defendants did conduct and participate, both directly and indirectly, in the conduct of

it".

101. Defendant "E-Trade Financial" had fiduciary obligations to Plaintiff J.P. Azoulay. Further, Plaintiff reposed confidence in E-Trade and reasonably relied on this confidentiality. As a result of Defendant E-Trade's fiduciary obligations to Plaintiff Azoulay, E-Trade was required to exercise duties of loyalty, due care and good faith. Encompassed within those duties is the duty to act to further the best interests of those account holders who rely on that fiduciary duty.

102. In direct violation of their fiduciary obligation, Defendant E-Trade reported information to co-Defendant NYSE without permission from the account holder, Azoulay.

103. As a direct and proximate result of the breach of fiduciary duty Plaintiff has suffered loss of the benefit of the AVGraphics/NYSE agreement, damages to its reputation and the loss of current and future earning potential.

### TENTH CLAIM FOR RELIEF AGAINST DEFENDANT

#### FRAUD

104. Defendants statements and accusations at the December 14, 2006 meeting to the effect that J.P. Azoulay had made a stock trade and that said trade had violated the AVGraphics/NYSE agreement were material and false and Defendants knew such statements to be both material and

27

false at the time they were made.

105. Further, Defendants made such false material statements with the intent that Plaintiff AVGraphics would rely on such statement. Plaintiff AVGraphics did justifiably rely on Defendants' false material statements and, as a direct and proximate result, suffered substantial injury.

**ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

106. Defendants NYSE were aware of the non-solicitation clause in the AVGraphics/NYSE agreement.

107. Defendants NYSE solicited all of Plaintiff AVGraphics' employees in violation of the non-solicitation clause.

108. Defendants NYSE intentionally and maliciously interfered with the employment relationship of Plaintiffs' corporation and its employees for the purpose of forcing AVGraphics to breach its agreement with NYSE.

109. As a direct and proximate result of the intentional interference with the AVGraphics/employee's employment agreements, Plaintiff has suffered loss of benefit of the AVGraphics/NYSE agreement, damage to its reputation and the loss of future earning potential.

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANT

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

110. The AVGraphics/NYSE agreement contained an implied in law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the benefits of such contract.

111. In terminating the contract in bad faith, without good cause, upon a pretext, in violation of public policy, all for the purpose of frustrating Plaintiffs' discovery and investigation of the Defendants' participation in and/or benefit from the fraud, theft and bribery and extortion, Defendants breached this covenant of good faith and fair dealing.

112. As a direct and proximate result of Defendants conduct, Plaintiffs have suffered a loss of income and benefits in an amount in excess of the jurisdictional limits of this Court.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the NYSE Group, Inc., for the First Cause of action for both compensatory and punitive damages in an award to be determined at a trial of this matter; and on the Second Cause of action against NYSE Group, Inc., in the sum of Ten Million ($10,000,000) Dollars in compensatory damages

29

as this Court may deem just and proper.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against NYSE Group, Inc., on the Seventh Cause of action for both compensatory and punitive damages in an award to be determined at a trial of this matter; and on the Eighth Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages and the further and additional sum of Ten Million ($10,000,000) Dollars in punitive damages for a total of Twenty Million ($20,000,000) Dollars in the Eighth Cause of Action; on the Ninth Cause of Action for both compensatory and punitive damages in an award to be determined at a trial of this matter; and on the Tenth Cause of Action in the sum of Ten Million ($3,000,000) Dollars in compensatory damages and the further and additional sum of Ten Million ($10,000,000) Dollars in punitive damages for a total of Twenty Million ($20,000,000) Dollars in the Tenth Cause of Action; plus in all causes of action reasonable attorney's fees as is permitted under the law, pre-judgment interest, the costs of this action and for such other relief as this Court may deem just and proper.

**WHEREFORE,** Plaintiffs demand judgment in their favor and against the NYSE Group, Inc., on the Eleventh Cause of Action for both compensatory and punitive damages in an award to be determined at a trial of this matter; and on the

Twelfth Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages and the further and additional sum of Ten Million ($10,000,000) Dollars in punitive damages for a total of Twenty Million ($20,000,000) Dollars in the Twelfth Cause of Action; plus, in all causes of action, reasonable attorney's fees as are permitted under the law, pre-judgment interest, the costs of this action and for such other relief as this Court may deem just and proper.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury.

Cronin & Byczek LLP
Attorneys for Plaintiffs

BY: _____
Linda M. Cronin (LC0766)
Rocco G. Avallone (RA8055)
1983 Marcus Avenue
Suite C-120
Lake Success, NY   11042
516-358-1700

32